**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

TANYA RIVKAH DRESKIN,

Plaintiff,

v.

BOROUGH OF BOGOTA, *et al.*,

Defendants.

Civil Action No. 26-7866 (SDW) (SDA)

**OPINION**

July 31, 2026

**WIGENTON**, District Judge.

Before this Court is Plaintiff Tanya Rivkah Dreskin's ("Plaintiff") Motion for a Temporary Restraining Order and Preliminary Injunction (D.E. 3-1) ("TRO" or "Motion"), pursuant to Federal Rule of Civil Procedure ("Rule") 65 and Local Civil Rule ("Local Rule") 65.1, against Defendants Borough of Bogota ("the Borough") and the Borough of Bogota Planning and Zoning Board ("the Zoning Board") (collectively, "Defendants"). This Opinion is issued after oral argument was heard on July 7, 2026. For the reasons stated herein, Plaintiff's Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

### a. Factual Background

Beginning in September 2024, Plaintiff has operated PLAYfully, a Jewish religious school, from her residence in Bogota, New Jersey. (Compl. ¶¶ 2–3; 52.) The number of enrolled students is central to the dispute. According to a January 2025 news article from the Jewish Link, the school opened with six students, and beginning in the spring 2025 semester, enrollment would "increase

to 12 students with three teachers." (D.E. 5-1 at 7.) At the TRO hearing, it was confirmed that the school had about twelve students as recently as the spring 2026 semester, and as of July 2, 2026, the day care had five students total at all points of the day[1]. (TRO Hr'g Tr. 19:18–20.)

1. Building & Zoning Code Violations

On April 27, 2026, the Borough's Building & Zoning Official sent Plaintiff a letter advising that, after receiving multiple complaints from neighbors, Plaintiff was operating an unauthorized day care in a residential zone ("Building Code Violations"), in violation of New Jersey Uniform Construction Code ("UCC") §§ 5:23-2.6 and 5:23-6.22. (Compl. ¶¶ 82–83; 85; D.E. 3-4 at 2.) The letter requested that Plaintiff promptly address the issue and warned that failure to timely comply would result in enforcement action, including citations and potential legal proceedings to cease PLAYfully's operations. (*See* D.E. 3-4 at 2.) Subsequently, a May 27 letter and a June 5 "Notice and Order of Penalty" advised that, due to Plaintiff's failure to timely comply, the Borough has imposed a $1,000 fine plus $200 per each day of noncompliance and ordered Plaintiff to cease all activities in PLAYfully's then-current format. (Compl. ¶ 92; D.E. 3-4 at 4–7.) On May 5, 2026, Plaintiff served a notice of appeal of the April 27 letter on the Building & Zoning Official and perfected the appeal with the Zoning Board on May 14, 2026. However, on June 9, 2026, the Zoning Board cancelled the previously scheduled hearing on that same day without explanation or rescheduling. (Compl. ¶¶ 89–91; 112.) On June 17, 2026, Plaintiff then appealed the June 5 Notice

[1] The Complaint alleges that "special classes" providing religious instruction for no more than two hours per day to children under six years old are exempt from licensure under N.J. Admin. Code § 3A:52-1.3 and not regulated as childcare facilities. (Compl. ¶ 57.) Plaintiff therefore contends that PLAYfully's recent operations with more than five students were permissible because they consisted only of a mid-morning religious prayer group and Torah class lasting less than two hours. (*Id.* ¶¶ 66–67.) Plaintiff represented at the TRO hearing, however, that this hours-based religious class format began only after the violations were issued and shortly before the end of the school year in June 2026; as recently as April 2026, PLAYfully had twelve students at any given time. (TRO Hr'g Tr. 14:24–15:1.) Accordingly, the two-hour religious instruction exemption is not material to this Court's TRO analysis, because this Motion concerns violations that occurred before the religious class structure was implemented.

and Order of Penalty to the Bergen County Construction Board of Appeals ("Construction Board"); that appeal remains pending as of the date of this Opinion. (*Id.* ¶ 105; D.E. 3-1 at 7.)

2. Fire Code Violations

On May 12, 2026, Plaintiff was served with a Notice of Violations from the Bogota Division of Fire Prevention ("Fire Code Violations") for violations arising from Plaintiff's failure to install required school safety features, carrying penalties of up to $5,000 per violation per day. (Compl. ¶¶ 123–129; D.E. 3-4 at 12–24.)

3. Health Code Violations

On June 12, 2026, Plaintiff received a Notice of Violation from the Bogota Health Department ("Health Code Violations") asserting that PLAYfully was operating as a nursery school without a license in violation of the Borough Health Code, Title XXIX ("Title XXIX"). (Compl. ¶ 116; D.E. 3-4 at 9–10.) The Notice directed Plaintiff to "discontinue all nursery school operations. . . until the proper applications are submitted" and to abate the violations by July 2, 2026. (D.E. 3-4 at 9.) Title XXXVIII, attached to the Notice, advised that significant penalties of fines and imprisonment accruing daily could be imposed if Plaintiff did not timely abate the violations. (*Id.* at 10.) To operate within a safe harbor, Plaintiff structured her summer program to limit enrollment to no more than five students at any given time. (D.E. 3-1 at 8.)

b. <u>Procedural History</u>

On June 29, 2026, Plaintiff filed a ten-count Complaint against Defendants, alleging violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the Free Exercise Clause of the First and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment, among other things. (*See generally* Compl.) Two days later, on July 1, 2026, Plaintiff moved for a temporary restraining order and preliminary injunction, and timely

briefing ensued. (D.E. 3; *see* D.E. 5, 7.) On July 7, 2026, this Court held a hearing and reserved decision, directing that the status quo be maintained and declining to impose any restraints[2]. (D.E. 4, 11; TRO Hr'g Tr. 55:17–20.) Plaintiff asks this Court to enjoin the enforcement of a Borough ordinance against Plaintiff's current five-child family day care pending the resolution of this Motion, and to bar the enforcement of any construction, fire, health, or zoning code provisions against Plaintiff's current family day care. (D.E. 3-1 at 6.)

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order and a preliminary injunction is the same. *See Interior Motives, Inc. v. Salvatore*, No. 20-5178, 2020 WL 2611517, at *2 (D.N.J. May 22, 2020) (quoting *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009)). "A preliminary injunction is an extraordinary remedy that is never to be awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). When considering whether to grant a preliminary injunction, courts must decide whether the party seeking the injunction has shown: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller*

[2] On July 24, 2026, Plaintiff advised this Court that on that date, the Borough posted an "Unsafe Structure Notice" to Plaintiff's home, ordering that the home is not authorized for use as a daycare or preschool. (D.E. 12.) Plaintiff contends that this action is another unlawful attempt to bar her lawful operation, renewing her request for an emergency TRO, and requesting an evidentiary hearing. (*Id.*) On July 27, 2026, the Borough responded, arguing that the Unsafe Structure Notice preserves the status quo because it is directly connected to the Notice of Violations issued on June 5, 2026, which ordered PLAYfully to cease operations. (D.E. 14.) This Court's order maintaining the status quo at the TRO hearing did not authorize Plaintiff to operate in violation of the Borough's Notice or the various Codes. (TRO Hr'g Tr. 55:17–20.) In the Order issued prior to the TRO hearing, this Court imposed no restraints and stated only that the hearing would address the specific requirements of a TRO. (D.E. 4.) As no restraints were imposed at any time, the Borough was not prohibited from addressing Plaintiff's continuing violations. Accordingly, Plaintiff's request for an evidentiary hearing is denied.

*v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)). The Third Circuit has placed particular weight on the first two factors, instructing that it "cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 350 (D.N.J. 2020) ("A court will consider all four factors, but the first two are essential: A court may not grant injunctive relief, 'regardless of what the equities seem to require,' unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm." (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000)). If a court finds that the first two factors weigh in favor of the moving party, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## III. DISCUSSION

In support of her Motion, Plaintiff argues that the Borough's ordinances do not apply to PLAYfully because as of the filing of this Motion, it enrolled five or fewer students and therefore qualifies as a "family day care" under New Jersey law. (D.E. 3-1 at 5.) Plaintiff contends that because a family day care is treated the same as a private family residence, the Building, Fire, and Health Code violations that the Borough has imposed on PLAYfully as a daycare should be enjoined. (*Id.*) Plaintiff further asserts that she faces imminent irreparable harm because the Borough's actions infringe her religious freedoms, as PLAYfully is the "center of her livelihood and faith" and because the threat of significant fines and potential imprisonment constitutes irreparable harm. (*Id.* at 6.) In response, the Borough argues that its enforcement actions were

lawful because PLAYfully does not satisfy the requirements of a "family day care", both because more than five students have been enrolled and because Plaintiff does not reside in the home from which PLAYfully operates, which is required of a family day care[3]. (D.E. 5 at 8.) Additionally, the Borough contends that the Motion is moot because Plaintiff timely appealed her Building and Fire Code violations to the Construction Board and that appeal remains pending. (*Id.* at 6.) The Borough further argues that the land use regulations are content neutral and notes that Plaintiff has not identified any secular family day cares believed to be operating outside of the five-student safe harbor. (*Id.* at 10–11.)

Because Plaintiff has established neither a likelihood of success on the merits nor irreparable harm, her request for a TRO and a preliminary injunction must be denied for the reasons set forth below. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) ("The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'") (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

**A. Likelihood of Success on the Merits**

A party moving for a preliminary injunction bears the burden of proving its likelihood of success on the merits of its case. *Ferring Pharms.*, 765 F.3d at 210. The moving party must "'demonstrate that it *can* win on the merits,' which involves a showing that its chances of establishing each of the elements of the claim are 'significantly better than negligible.'" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (quoting *Reilly*, 858 F.3d at 179). Likelihood of success, however, does not require "a more-likely-than-not showing of success." *Reilly*, 858 F.3d at 179 n.3. Rather, "a sufficient degree of success for a strong showing exists if there is a

[3] Defendant disputes that Plaintiff resides in the home from which PLAYfully operates, which is required of a family day care. (D.E. 5 at 8.) At the TRO stage, courts generally may not resolve material factual disputes. *Pro. Plan Examiners of New Jersey, Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984). Accordingly, this Court will not reach the residency issue at this time.

'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case." *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017).

Here, Plaintiff has failed to meet her burden of demonstrating a likelihood of success on the merits. This Court lacks subject matter jurisdiction to review Plaintiff's challenge of the Building, Fire, and Health Code violations against her. Additionally, her claims under the RLUIPA, the Free Exercise Clause, and New Jersey Law Against Discrimination ("NJLAD") are either barred or unlikely to succeed on the merits.

i. Challenge to the Building, Fire, and Health Code Violations

Subject matter jurisdiction defines a court's authority to adjudicate a case. *Brown v. Francis*, 75 F.3d 860, 866 (3d Cir. 1996). Because subject matter jurisdiction is a threshold requirement, a movant who cannot establish the court's subject matter jurisdiction over a claim cannot establish a likelihood of success on that claim at the TRO stage. *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201 (3d Cir. 1993). When a state statute assigns appellate review to a state forum, a federal district court generally lacks subject matter jurisdiction to entertain that appeal because district courts do not have appellate jurisdiction, and a state statute cannot confer such jurisdiction on a federal court. 28 U.S.C. §§ 1331, 1332; *see Carroll v. United States*, 354 U.S. 394, 399 (1957) (". . . the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by [federal] statute.")).

New Jersey's Uniform Construction Code provides for a county construction board of appeals to hear appeals from agency decisions arising under it. N.J. Stat. Ann. § 52:27D-127. The board must hear the appeal and issue a decision within ten business days after the appeal is

submitted, and failure to do so is deemed a denial. N.J. Admin. Code § 5:23A-2.3(a); (c). Judicial review of a construction board decision lies in the Law Division of the Superior Court, and the board's decision remains in effect while the appeal is pending, unless the board or the Superior Court grants a stay. § 5:23A-2.3(d). Separately, New Jersey municipal courts have jurisdiction over enforcement proceedings for health ordinances. N.J. Stat. Ann. § 26:3-72.

Here, this Court lacks both original jurisdiction and statutory jurisdiction to entertain Plaintiff's appeal of her Building, Fire, and Health Codes violations[4]. First, for her Building Code violations, Plaintiff was cited under N.J. Admin. Code §§ 5:23-2.6 and 5:23-6.22—both provisions within the UCC—and appeals from such determinations lie with the Construction Board. The same is true of the twelve Fire Code violations, all of which arise under the Uniform Fire Code[5] ("UFC"); the Construction Board is the statutorily designated forum for UFC appeals as well. N.J. Stat. Ann. § 52:27D-206b. Plaintiff has brought this matter before receiving any decision from the Construction Board. Plaintiff asserts that ten business days since the filing of her appeal have lapsed, deeming her appeal denied. However, any challenge following such denial must be brought in the Law Division of the Superior Court, as the statute provides. (Compl. ¶ 105; D.E. 7 at 19.) Lastly, Plaintiff's appeal of the Borough's "jail-backed" Health Code violations must be brought

---

[4] Plaintiff contends that the "only legal question" presented by the TRO Motion is whether a five-child family day care home is permitted as of right. (D.E. 7 at 8.) The Borough does not dispute that the five-child safe harbor provision exists and agrees that Plaintiff's business would be permitted if it had only five children at all times. (TRO Hr'g Tr. 32:17–33:2.) However, Plaintiff conceded at the TRO hearing that as recently as June 2026, the daycare had up to twelve students. (*Id.* 18:2–7.) Although Plaintiff contends that she has cured the issue and now strictly operates with five children, this cure only eliminates future violations but not past ones, as voluntary compliance does not erase liability for completed violations. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.")) Thus, even if the Borough's enforcement actions may not apply to Plaintiff's *current* five-child family day care, they applied when issued, and Plaintiff may be held liable for those violations. Plaintiff's contention that the Borough seeks to label PLAYfully as an "illegal day care" "now and indefinitely" is misplaced.

[5] The UFC is promulgated pursuant to the Uniform Fire Safety Act, N.J. Stat. Ann. § 52:27D-192 *et. seq.*

in Bogota Municipal Court because Title XXIX is a health ordinance. (*See* D.E. 3-4 at 9–10.) Accordingly, because this Court lacks subject matter jurisdiction over Plaintiff's challenge of the Building, Fire, and Health Code violations, Plaintiff cannot establish any likelihood of success on those claims.

ii. <u>Freedom of Religion Claims</u>

a. Free Exercise Clause

The Free Exercise Clause provides that Congress cannot make laws prohibiting the free exercise of religion. U.S. Const. Amend. I. In this context, a law is neutral if it does not target religious conduct either on its face or as applied in practice. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 275 (3d Cir. 2007) ("The Plan is clearly neutral; there is no evidence that it was developed with the aim of infringing on religious practices. . . it does not reveal a value judgment that religious reasons for assembling are less important than secular reasons."). When a law is both neutral and generally applicable, meaning that it equally burdens religious and secular conduct, the Free Exercise Clause affords no protection even if the law incidentally burdens religious practice. *Id.*; *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002) (citing *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990)). The plaintiff has the burden of establishing a Free Exercise Clause violation and may do so by demonstrating that a law that is not neutral or generally applicable has burdened religious exercise. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (citing *Smith*, 494 U.S. at 879–881)). If the plaintiff meets this burden, the law is subject to strict scrutiny, and the government must show that it is justified by a compelling interest and narrowly tailored to achieve that interest. *Id.* (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 546 (1993). Even when the

law is facially neutral, officials can violate the neutrality requirement when they exercise discretion to exempt secular conduct but not comparable religious conduct. *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 165.

Here, Plaintiff contends that the Borough's enforcement actions violate the Free Exercise Clause because the governing statutory and regulatory scheme is neither neutral nor generally applicable. (D.E. 3-1 at 13.) Plaintiff asserts that the Borough has granted exemptions for secular educational uses, citing two secular family day cares that were allegedly exempted from the Building and Health Codes, while her religious Jewish program was not. (*Id.*) Plaintiff also argues that the Borough's characterization of PLAYfully as an "illegal daycare" is "compelling evidence" that enforcement is not neutral or generally applicable. (*Id.* at 13–14.)

These assertions do not establish a Free Exercise Clause violation. On their face and as applied, the Building, Fire, and Health Code provisions at issue are content neutral, and Plaintiff does not identify any specific provision that targets religious conduct. Moreover, Plaintiff has failed to support her claim of disparate treatment with evidence of similarly situated secular comparators who were treated more favorably. Although Plaintiff identifies Ms. Judy's Day Care and Little Barefoot as other family day cares operating in the same residential zone, she fails to identify if these businesses have also operated outside the five-child safe harbor. (D.E. 7 at 14.) Accordingly, Plaintiff has failed to carry her burden of demonstrating that the challenged laws are not neutral or generally applicable, or that they burden her religious exercise on that basis.

b. RLUIPA Claims

The Religious Land Use and Institutionalized Persons Act is a federal statute that protects religious exercise in two narrow contexts: land use regulation and the treatment of institutionalized people. 42 U.S.C. § 2000cc *et seq.* The land use section is organized into two sections: Substantial

Burdens and Discrimination and Exclusion, the latter of which contains the Equal Terms and Nondiscrimination provisions. § 2000cc(a); (b). Under the Substantial Burden section, the RLUIPA prohibits any land use regulation that imposes a substantial burden on religious exercise unless the government satisfies strict scrutiny. § 2000cc(a)(1). The movant must first demonstrate a substantial burden on religious exercise, and if the movant is successful, the burden shifts to the government to justify the regulation. *Garden State Islamic Ctr. v. City of Vineland*, 358 F. Supp. 3d 377, 381 (D.N.J. 2018).

In the land use context, a plaintiff must show more than a mere inconvenience to establish a "substantial burden" under the RLUIPA; the burden must render religious exercise "effectively impracticable" but does not require a showing of discriminatory governmental conduct. *Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 F. App'x 70, 77 (3d Cir. 2004) (quoting *C. L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.")); *Minhal Acad. of Turnersville, Inc. v. Twp. of Washington*, No. 20-01120, 2021 WL 3758073, at *4 (D.N.J. Aug. 25, 2021) (quoting *The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 406 F. Supp. 2d 507, 515 (D.N.J. 2005)); *see Garden State Islamic Ctr.*, 358 F. Supp. 3d at 384–387 (finding a substantial burden on religious exercise when the government's execution of the sewage permit process imposed procedural obstacles at every stage, causing added expense and delay and effectively preventing the mosque from expanding). RLUIPA's legislative history likewise reflects that the statute was not intended to provide religious organizations with immunity from zoning regulations. *See* 146 Cong. Rec. S7774-01, S7777, 2000 WL 1079346.

Under the Equal Terms provision, which prohibits the implementation of land use regulations that treat a religious assembly or institution on less than equal terms with a secular one, a plaintiff must identify a similarly situated secular comparator in light of the regulation's purpose. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007). Because the Equal Terms provision operates to enforce the Free Exercise Clause in land use regulations, legislative history indicates that it generally applies to laws that are not neutral and generally applicable. *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 341 (D.N.J. 2016) (quoting 146 Cong. Rec. S7774-01, S7777)).

Here, Plaintiff contends that the Borough's conduct independently violates both the Substantial Burden and Equal Terms provisions of the RLUIPA. (D.E. 3-1 at 11–13.) As to substantial burden, Plaintiff argues that the Borough's demand that PLAYfully cease its activities "with no path to operate even at the state-guaranteed five-child level", functions as a complete bar on her religious instruction of young children[6] under the Substantial Burden provision and thus cannot survive strict scrutiny. (*Id.* at 11–12.) The record does not support that characterization. The Borough's enforcement actions have not rendered Plaintiff's religious exercise "effectively impracticable"—Plaintiff remains free to practice her faith in other ways, and the enforcement regime does not permanently prohibit PLAYfully from operating or expanding in the future. Rather, the Borough is seeking to enforce the Building, Fire, and Health Codes based on Plaintiff's prior noncompliance. Once Plaintiff achieves compliance and resolves any penalties from past violations, her ability to provide religious instruction through the program is not foreclosed on the

[6] Religious instruction and education are protected acts of religious exercise. *Mahmoud v. Taylor*, 606 U.S. 522, 547 (2025) (citing *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 754 (2020)).

same grounds. Accordingly, Plaintiff has not demonstrated a substantial burden under the RLUIPA.

Plaintiff's claim under the Equal Terms provision likewise fails, as she has failed to identify a secular comparator that is similarly situated in the context of the regulation. Plaintiff identifies two secular family day cares in the R-1 zone—Ms. Judy's Day Care and Little Barefoot—as comparators. (*Id.* at 13.) However, Plaintiff does not provide any further details as to whether those facilities are similarly situated in the context of the regulation's purpose, including whether they operate outside the five-child safe harbor parameters, or otherwise violate the same codes and regulations at issue. Absent that showing, Plaintiff has not carried her burden to demonstrate unequal treatment as to the regulation's objectives. Plaintiff's attempt to cast the Borough's public schools and public library as secular comparators is also unavailing. (*Id.* at 13.) Even if located in the same zone, those uses are not comparable to a residence-based family day care. Lastly, Plaintiff's citation to *WR Prop. LLC v. Twp. of Jackson*, No.17-3226, 2021 WL 1790642 (D.N.J. May 5, 2021) does not advance her claim. In that case, the Court addressed an ordinance found to be non-neutral and enacted with a discriminatory purpose, which is not the case with the ordinances and regulations at issue here. (*Id.* at 11.)

c. NJLAD Claims

The NJLAD prohibits governmental entities from adopting or implementing land use regulations that discriminate based on creed. N.J. Stat. Ann. § 10:5-12.5(a). Claims pursuant to § 10:5-12.5(a) may be enforced only by commencing an action in Superior Court. § 10:5-12.5(b); *Hansen Found., Inc. v. City of Atl. City*, 504 F. Supp. 3d 327, 342 (D.N.J. 2020) ("This Court has previously interpreted this provision to mean that New Jersey Superior Court has exclusive jurisdiction over claims of discrimination in land use policy by a municipality that arise under

N.J.S.A. § 10:5–12.5, and therefore federal district courts lack subject matter jurisdiction.") Accordingly, Plaintiff's NJLAD claim fails because the Superior Court has exclusive jurisdiction and this Court lacks subject matter jurisdiction.

**B. Irreparable Harm**

The movant "has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). A mere risk of such harm is insufficient. *Id.* To establish irreparable harm, a "plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Holland v. Rosen*, 277 F. Supp. 3d 707, 725 (D.N.J. 2017) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989.)) As a general rule, "injury measured in solely monetary terms cannot constitute irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (citing *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178 (3d Cir. 2008)). However, irreparable harm may exist "where a party may be forced to shut down without the requested injunctive relief." *W. S. Int'l, LLC v. M. Simon Zook, Co.*, 566 F. App'x 192, 197 (3d Cir. 2014) (citing *Instant Air Freight Co.*, 882 F.2d at 802). Even then, the injury must be of a "peculiar nature", and ordinary compliance costs alone do not establish irreparable harm. *A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 527 (3d Cir. 1976).

The assertion of constitutional rights also does not automatically establish irreparable harm, and it is "direct penalization, as opposed to incidental inhibition", that constitutes irreparable injury in the First Amendment context. *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)). Where the movant seeks a preliminary

injunction that "will alter the status quo," it must "meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods*, 528 F.3d at 179 (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)); *see Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) ("The standard to obtain preliminary injunctive relief is heavy, particularly where injunctive relief alters the status quo.").

Here, even if Plaintiff had demonstrated a likelihood of success on the merits, she cannot demonstrate irreparable harm. The harm she faces—fines and the possibility of imprisonment arising from noncompliance—is not the type of "peculiar" harm that warrants extraordinary relief[7]. (*See* D.E. 3-1 at 16–17.) Plaintiff argues that money damages alone cannot remedy the loss of religious exercise, destruction of her religious school program, emotional distress, and potential chilling effects. (*Id.* at 16.) However, the harm Plaintiff faces is the ordinary burden of regulatory compliance for operating a residence-based family day care beyond permitted capacity. She is not subject to a unique injury—she is subject to the same compliance burdens that would apply to any similarly situated person. The invocation of religious liberty also does not automatically establish irreparable harm, as the enforcement regime does not target religious conduct and at most incidentally affected a religious program. Accordingly, Plaintiff has failed to establish irreparable harm, and the TRO Motion is denied.

## IV. CONCLUSION

[7] Even if Plaintiff's injury was peculiar, she has not demonstrated an imminent threat of the significant penalties she invokes. Any penalties for the Building or Fire Code violations would be determined by the Construction Board of Appeals, with further review available in the Superior Court. (D.E. 5 at 9.) Any penalties for the Health Code violations, which is the immediate injury prompting this TRO, would be determined and imposed, if at all, by the Bogota Municipal Court. (*Id.*) Moreover, at the TRO Hearing, the Borough represented that the enforcement efforts were intended to bring the property into compliance, not to punish. (TRO Hr'g Tr. 32:6–9.) As the Borough itself lacks authority to impose these penalties and has disclaimed a punitive purpose, Plaintiff's asserted threat of catastrophic fines and imprisonment is speculative rather than imminent.

For the reasons set forth above, Plaintiff's TRO Motion is **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Stacey D. Adams, U.S.M.J.